IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: | ) |
| | ) Chapter 12 |
| WESTERN SLOPES FARMS | ) |
| PARTNERSHIP, | ) Bankruptcy No. 17-00699 |
| | ) |
|    Debtor. | ) |
| | ) |
| THE SECURITY NATIONAL BANK | ) ADVERSARY NO. 17-09047 |
| OF SIOUX CITY, IOWA, as Personal | ) |
| Representative of the Estate of | ) |
| Roger E. Rand, Deceased | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WESTERN SLOPES FARMS | ) |
| PARTNERSHIP and BJM INC., | ) |
| | ) |
|    Defendants. | ) |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

This motion for summary judgment came before the Court at a telephonic hearing on August 10, 2018. Daniel Hartnett and Jeremy Saint appeared for The Security National Bank of Sioux City, Iowa, which is acting as the Personal Representative of the Estate of Roger E. Rand (the "Bank"). Donald Molstad appeared for Western Slopes Farms Partnership ("Debtor") and BJM, Inc. ("BJM") (together "Defendants"). This is a core proceeding under 28 U.S.C. § 157(b)(2)(H).

## BACKGROUND AND ARGUMENTS

Between 2011 and 2016 Roger Rand made a series of loans to Debtor, BJM, and several other entities controlled by Frank Welte. While each entity held separate assets, they effectively functioned as a single farming operation controlled by Mr. Welte. Debtor, BJM, and the other related entities signed several security agreements granting Mr. Rand a security interest in all personal property held by the related entities, securing all present and future debts of the entities to Mr. Rand. All the entities, including Debtor and BJM, were liable for the entire debt to Mr. Rand and all personal property held by the entities secured this debt, no matter which entity controlled the property.

Roger Rand died on August 29, 2016. The Bank was appointed as the personal representative of his estate. Debtor defaulted on its loans and the Bank sought to execute on the estate's security interest in all personal property held by Debtor, BJM, and related entities. The Bank filed a Petition for Replevin on March 8, 2017 in Iowa District Court in Woodbury County. Security Nat'l Bank of Sioux City, Iowa v. Welte, No. EQCV174667 (D. Iowa May 9, 2017) (Ruling on Request for Replevin). That court found that the total collateral held by all entities was worth approximately $1,856,377. Id. at 2. That court specifically found that the amount of the debt owed to the Bank exceeded the value of the

collateral, meaning all personal property held by all entities was fully encumbered by the Bank's security interest.

The Bank prepared to levy on the property, including all equipment held by BJM. On June 8, 2017, however, BJM executed a Bill of Sale transferring all the equipment it owned to Debtor. The Bill of Sale lists the value of the equipment as approximately $258,500. Debtor paid no consideration to BJM in this exchange. Debtor filed for bankruptcy the same day.

The Bank now brings this action asking the Court to declare the transfer of equipment from BJM to Debtor voidable under Iowa Code § 684.4 or § 684.5. Chapter 684 is Iowa's enactment of the Uniform Voidable Transactions Act ("UVTA"), formally known as the Uniform Fraudulent Transfer Act ("UFTA"). The Bank moved for summary judgment and filed a statement of undisputed facts and memorandum of law in support of its motion. Defendants filed a resistance and brief in support of its resistance.

Defendants argue that Iowa's UVTA is not applicable because the equipment was not transferred with the intent to defraud its creditors, as required under the statute. Defendants argue that the equipment was transferred to Debtor as a matter of economy. Debtor and the related entities consolidated all of the assets into Debtor's hands so that only one entity would need to file bankruptcy, thereby saving the cost of paying multiple filing fees. Defendant's argue that,

since the Bank's security interest remained with the equipment transferred from BJM to Debtor and both entities are obligated on the loan, the Bank was not harmed by the transfer. In sum, Defendants argue the Bank's security interest is still intact. Similarly, Defendants argue that, because the equipment was transferred subject to the Bank's security interest, no consideration was needed for the transfer.

## CONCLUSIONS OF LAW AND ANALYSIS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This rule applies to adversary proceedings in bankruptcy. Fed. R. Bankr. P. 7056.

A dispute is "genuine" if reasonable minds could differ about the result of a case because of that dispute and is material if it "might affect the outcome of the suit." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251–52, (1986). In determining if summary judgment is appropriate, the Court must make "all reasonable inferences in the light most favorable to the nonmoving party." Reed v. City of St. Charles, 561 F.3d 788, 790 (8th Cir. 2009). Here the parties do not dispute the facts, they dispute only whether the Bank is entitled to judgment as a matter of law.

The Bank argues the transfer of equipment is voidable under two sections of Iowa's UVTA, § 684.4 and § 684.5.  Section 684.4 states:

> A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation under any of the following circumstances:
>
> a. With **actual intent** to hinder, delay, or defraud any creditor of the debtor.

Iowa Code § 684.4 (emphasis added).  Section 684.4 lays out eleven factors for the court to consider in determining whether the transfer was made with actual intent. Id.  These factors are sometimes called "badges of fraud."  Textron Fin. Corp. v. Kruger, 545 N.W.2d 880, 883 (Iowa App. 1996).

Unlike § 684.4, no finding of actual intent in required under § 684.5 which provides:

> A transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Iowa Code § 684.5.  Thus, under § 684.5 a transaction is voidable by a creditor if: (1) the creditor's claim arose before the transfer, (2) the debtor did not receive reasonably equivalent value in the transfer, and (3) the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer.  Id.

5

Both of these code sections apply only to "[a] **transfer** made or obligation incurred by a debtor. . . ." Iowa Code § 684.4; Iowa Code § 684.5 (emphasis added). Iowa's UVTA defines "transfer" as:

> every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with **an asset or an interest in an asset**, and includes payment of money, release, lease, license, and creation of a lien or other encumbrance.

Iowa Code § 684.1(16) (emphasis added).

Under the UVTA's definition, in order for there to be a "transfer," there must be an "asset" that was transferred. The UVTA defines "asset" as "property of a debtor, but **does not include** . . . **[p]roperty to the extent it is encumbered by a valid lien**." Iowa Code § 684.1(2) (emphasis added). "Lien" under the UVTA includes security interests, judicial liens, common-law liens, and statutory liens. Iowa Code § 684.1(9). Thus, a piece of property fully encumbered by such a lien is not an "asset" under the UVTA and is not capable of being a "transfer" that can be voided under § 684.4 or § 684.5.

The inapplicability of the UVTA to fully encumbered property is controlling in this jurisdiction.

> [A] "transfer," and more specifically, a "fraudulent transfer," must involve an "asset." An "asset," in turn, is defined as "property of a debtor," but expressly excludes, inter alia, "[p]roperty to the extent it is encumbered by a valid lien." IOWA CODE § 684.1(2)(a). The Iowa Supreme Court adopted the UFTA's definition of "asset" for common law purposes long before the Iowa legislature adopted the UFTA itself. Consequently, if a "transfer" involves only property encumbered by a

6

> valid lien, it cannot be a "fraudulent transfer" within the meaning of either the UFTA or Iowa common law, because there is no "asset" involved, and if there is no "asset" involved, the intent of the parties to the transfer is irrelevant.

Webster Indus., Inc. v. Northwood Doors, Inc., 320 F.Supp.2d 821, 836 (N.D. Iowa 2004) (citations omitted).

Other jurisdictions have also found that the UVTA does not apply to transactions involving fully encumbered property. Mullins v. TestAmerica, Inc., 564 F.3d. 386, 414 (5th Cir. 2009) ("Together, these definitions exempt from [Texas UFTA] an alleged fraudulent transfer of property to the extent that such property is encumbered by a security interest. . ."); In re 1701 Commerce, LLC, 511 B.R. 812, 826 (Bankr. N.D. Tex. 2014) ("[A] transfer of property that is fully encumbered by valid liens may not, as a matter of law, constitute a fraudulent transfer under the [Texas UFTA]."); Compuware Corp. v. Innovatec Communications, LLC, 2005 WL 2076717 at *10 (E.D.Wis. Aug. 24, 2005); Rafool v. Propack Sys., LLC (In re Fleming Packaging Corp.), Adv. No. 05-8124, Bankr. No. 03-82408, 2007 WL 1021884 at *8 (Bankr. C.D. Ill. March 30, 2007).

This interpretation of Iowa's UVTA not only reflects the language of the statute and the subsequent case law but aligns with the purpose of the UVTA: "The rationale for the right to reclaim fraudulently conveyed property is, and always has been, to prevent a debtor from 'frustrat[ing] his creditor's rights and avoid[ing] his obligations by changing title to his assets.'" Schaefer v. Schaefer,

7

795 N.W.2d 494, 498 (Iowa 2011) (quoting 37 Am.Jur.2d Fraudulent Conveyances and Transfers § 1, at 520).

Here, the only property at issue is the equipment that passed from BJM to Debtor on June 8th, 2017. The Iowa District Court for Woodbury County previously ruled in the replevin case that all collateral held by Debtor and related entities, including the equipment at issue, is fully encumbered by the Bank's security interest. Security Nat'l Bank of Sioux City, Iowa v. Welte, No. EQCV174667 at 6 (D. Iowa May 9, 2017) (Ruling on Request for Replevin). This Court ruled, based on the state court decision, that the doctrine of issue preclusion bars any dispute that the amount of the debt is less than the value of the collateral. In re Western Slopes Farms P'ship, Bankr. No. 17-00699, 2018 WL 1886102 (Bankr. N.D. Iowa April 18, 2018). In other words, the parties are bound by the state court's determination that the equipment is fully encumbered. Id.

The Court finds that at the time the equipment passed from BJM to Debtor, it was fully encumbered by the Bank's security interest. Under Iowa's UVTA, fully encumbered property is not an "asset" that can be "transferred." Accordingly, there was no recognized "transfer" under Iowa's UVTA and the Bank, therefore, is not entitled to judgment as a matter of law.

## CONCLUSION

**WHEREFORE**, the Bank's Motion for Summary Judgment is DENIED.

Dated and Entered:  September 10, 2018

*/s/ Thad J. Collins*
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE